## LALLEMANT et ux. v. CITY OF DENISON.
### No. 3912.

Court of Civil Appeals of Texas. Texarkana.
Nov. 20, 1930.

Carl R. McLynn, of San Angelo, for appellants.

Hamp P. Abney, of Sherman, for appellee.

WILLSON, C. J. (after stating the case as above).

Appellants insist the allegations in their answer that they were induced to execute the instrument purporting to create a lien on their homestead by false and fraudulent representations and promises made to them by Vinnedge and Shearer, acting within the scope of authority they possessed as agents of the paving company, that said company would give Charley Lallemant employment for a year at $3 a day, was supported by undisputed evidence heard at the trial, and that the court below therefore erred when he instructed the jury to return a verdict in favor of said paving company. The evidence, and only evidence we have found in the statement of facts relevant to the matters covered by said allegations is the testimony of appellants as witnesses in their own behalf. Appellant Charley Lallemant testified:

"Mr. Guy Vinnedge talked to me about signing the lien. I don't know how many times he saw me before I signed it. He was up there several times. I think he talked to me six or seven times about it. He saw me six or seven times before I signed. I did not agree to sign when he first saw me. I refused to sign when he talked to me, and he came back five or six more times, and I finally agreed to sign. Before I signed the lien, Mr. Vinnedge told me if I would sign it, he would give me work, me and my boy, for a year. I had known Mr. Vinnedge off and on for a long time. I know of my own knowledge that Mr. Vinnedge secured signatures of others to paving lien on North Houston Avenue. Mr. Vinnedge told me I was to work for the Kaw Paving Company. I never did work for the Kaw Paving Company after that. I tried to secure work with that company after that. I was physically able to work at that time. I talked to somebody else in reference to signing that lien down there. It was one of the boys down there, I have forgotten his name. That was three or four days before I signed the lien. I believe it was Shearer. He told me he would give me work. I was induced to sign and execute the lien by the statement of Mr. Vinnedge that he would give me work to pay for the paving. If he had not made this statement and promise to me, I would not have signed and executed the lien, because I was not able to pay for the paving, was out of work, and could not see any way to pay for it, could not see any way out."

Appellant Mary Lallemant testified:

"Guy Vinnedge talked to me about signing that lien. Guy Vinnedge was at our house off and on for three weeks before we signed the instrument. Sometimes he was there

every day. I talked to him last two days before we signed the instrument. In that conversation two days before the contract was signed he wanted us to sign it, and we told him that my husband had been out of work since the strike, and we were not able to pay for the paving and we refused to sign for three weeks, and then is when he promised my husband work, and it was signed the next day. Mr. Vinnedge was in my presence when he made the promise of work. He promised me first and the next day I told him about it. I would not have signed the contract but for that promise; we could not pay for it, and I would not have signed it. We had refused. I know of my own personal knowledge that my husband did not get work with the Kaw Paving Company after that. They did not give him work."

It is obvious, we think, that the testimony set out would not have warranted a finding that Shearer was an agent of the paving company; and we do not think it would have supported a finding that Vinnedge was such an agent, with authority to act for the company in making the representations and promises charged against him. The only part of said testimony which, reasonably, could be claimed to tend in the least to show such authority in Vinnedge, was that of Charley Lallemant that Vinnedge had "secured signatures of others to paving lien on North Houston Avenue." There was no evidence showing the time, place, and circumstances under which such signatures were secured, and none showing that the instruments carrying such signatures were ever delivered to and accepted and acted upon by the paving company.

The judgment is affirmed.